IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| **QUINTON FUGERSON,**<br><br>*Plaintiff,*<br><br>v.<br><br>**TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,**<br><br>*Defendant.* | **CIVIL ACTION NO.**<br>**4:24-cv-00156-TES** |

**ORDER**

Before the Court is Defendant Travelers Property Casualty Insurance Company's Partial Motion to Dismiss [Doc. 12], Travelers' Motion for Partial Summary Judgment [Doc. 26], and Plaintiff Quinton Fugerson's Motion for Partial Summary Judgment [Doc. 21]. This case arises from a dispute over underinsured motorist (UM) benefits following a $600,000 jury verdict. For the reasons explained in further detail below, the Court **DENIES** Travelers' Partial Motion to Dismiss [Doc. 12]; **GRANTS** Plaintiff's Motion for Partial Summary Judgment [Doc. 21]; and **GRANTS in part** and **DENIES in part** Travelers' Motion for Partial Summary Judgment [Doc. 26].

**BACKGROUND**

Plaintiff was injured in a June 2017 motor-vehicle collision in Muscogee County, Georgia. [Doc. 10, ¶ 6]. At the time of the collision, Plaintiff qualified as an "insured"

under a Travelers insurance policy[1]—delivered to Plaintiff's employer in Florida—which contained an endorsement that afforded $1,000,000 in UM coverage (the "Policy"). [*Id.* at ¶¶ 6–7, 36].

In July 2018, Plaintiff filed suit against the at-fault driver and her mother in the State Court of Muscogee County, Georgia. [*Id.* at ¶ 11]. In February 2019, the at-fault driver's insurer—Owners Insurance Company—settled with Plaintiff and tendered its $100,000 policy limit. [*Id.* at ¶ 12].

On February 11, 2020, the Georgia State Board of Workers' Compensation approved a Stipulation and Agreement between Plaintiff and his workers' compensation carrier for $150,000, allocated as follows: $39,095.17 to Plaintiff's attorney, which included a 25 percent contingency fee of $37,500 and $1,595.17 in "itemized out-of-pocket expenses"; $1,382.74 directly to the Division of Child Support Services; and the remaining $109,522.09 directly to Plaintiff. [Doc. 26-7, ¶ 9].

After Owners settled with Plaintiff, Plaintiff sent a $725,000 demand to Travelers, which Travelers rejected. [Doc. 10, p. 18]. Instead, on March 5, 2020, Travelers offered to settle Plaintiff's claims for $2,500. [*Id.* at ¶ 16].

On February 5, 2021, Plaintiff submitted a Civil Remedy Notice to the Florida Department of Financial Services. [*Id.* at ¶ 18, pp. 15–18]. The Notice alleged that

---

[1] Policy No. TC2J-CAP-9528B300-TIL-17. [Doc. 10, ¶ 6].

2

"Travelers outright denied Plaintiff's demand [for $750,000] . . . and attempted to convince the worker's compensation adjuster to pursue a subrogation claim against [Plaintiff] to recover benefits paid, despite knowing that the worker's compensation case provided no benefits for [Plaintiff's] lifetime of general damages and pain and suffering." [*Id.* at p. 18].

In October 2023, a jury returned a $600,000 verdict in Plaintiff's favor. [*Id.* at ¶ 23]. Plaintiff filed suit against Travelers in the State Court of Muscogee County, Georgia, on September 30, 2024. [Doc. 1-1]. Travelers removed this action to federal court, citing diversity jurisdiction as its basis for removal. [Doc. 1]. Plaintiff's Amended Complaint, filed November 19, 2024, includes claims for breach of contract (Count 1) and statutory bad faith under Fla. Stat. § 624.155 (Count 2). [Doc. 10].

On November 20, 2024, Travelers filed this Motion seeking to dismiss Count 2 under Rule 12(b)(6) or, in the alternative, to strike Plaintiff's request for emotional-distress damages. [Doc. 12]. Plaintiff filed his Motion for Partial Summary Judgment on December 18, 2024, and Travelers filed its Motion for Partial Summary Judgment on January 15, 2025. [Doc. 21]; [Doc. 26]. The Court held a hearing on May 8, 2025, and now rules on all three motions.

## LEGAL STANDARD

### A. Motion to Dismiss

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in

3

the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

B. <u>Summary Judgment</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As to issues for which the *movant* would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact[] and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the *non-movant* would bear the burden of proof at trial, the movant may either (1) point out an absence of evidence to support the non-movant's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *Four Parcels*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)). If the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings[] and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

In considering a motion for summary judgment, courts must accept the evidence presented by the non-movant as true and draw all justifiable inferences in its favor.

*Liberty Lobby*, 477 U.S. at 255. However, courts are not required to draw "all possible inferences" in favor of the non-movant. *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001).

## DISCUSSION

The Court first considers Travelers' Partial Motion to Dismiss before turning to the parties' cross-Motions for Partial Summary Judgment.

### A.    Travelers' Partial Motion to Dismiss

First, the Court considers Travelers' Partial Motion to Dismiss. [Doc. 12]. Seeking to recover UM benefits arising out of a motor vehicle accident, Count 2 of Plaintiff Quinton Fugerson's Amended Complaint [Doc. 10] asserts a first-party bad-faith claim under Fla. Stat. § 624.155. [Doc. 10, ¶¶ 35–40]. Travelers moves to dismiss that claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff cannot maintain a first-party bad-faith claim because the underlying judgment did not exceed the policy limits. *See* [Doc. 12-1, Section B]. It is undisputed that Florida law governs this issue.[2]

---

[2] The Travelers insurance policy at issue in this case was issued and delivered in Florida. [Doc. 10, ¶ 36]. A federal court sitting in diversity must apply the choice of law rules of the forum state—Georgia in this case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Georgia law, the validity, form, and effect of insurance contracts are governed by the law of the place where the contract was delivered to the insured. *Gen. Tel. Co. of the Southeast v. Trimm*, 311 S.E.2d 460 (Ga. 1984) (noting that Georgia follows the rule of *lex loci contractus*); *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (citations omitted) (noting that Georgia law deems insurance contracts to have been "made at the place where the contract was delivered to the insured"). Plaintiff alleges that the policy in this case "was

6

While Florida courts have repeatedly held that an excess judgment or "functional equivalent" is essential to state a third-party bad faith claim, *see, e.g.*, *Perera v. U.S. Fidelity & Guar. Co.*, 35 So.3d 893, 899–900 (Fla. 2010), this case appears to present an issue of first impression: Under § 624.155, can a plaintiff maintain a first-party bad-faith claim against his own UM insurer when the underlying judgment did not exceed the policy limits?[3]

To answer this question, the Court begins with the statute's text. *Est. of Keeter v. Comm'r of Internal Revenue*, 75 F.4th 1268, 1279 (11th Cir. 2023); *Palm Beach Cnty. v. Fed. Aviation Adm'r*, 53 F.4th 1318, 1333 (11th Cir. 2022) (quoting *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So.3d 1, 9 (Fla. 2012)) ("[T]o 'discern legislative intent,' Florida courts look 'first to the plain and obvious meaning of the [law]'s text.'"). If the text "is clear and unambiguous and conveys a clear and definite message," the Court must simply apply it without resorting to the traditional tools of statutory interpretation. *Id.*

Subsection (1) of Fla. Stat. § 624.155 outlines specific insurer conduct that gives rise to a private civil action:

> (1) Any person may bring a civil action against an insurer when such person is damaged:
> . . .
>   (a) By a violation of [several enumerated statutory] provisions by the

---

issued and delivered in Florida," [Doc. 10, ¶ 36], and it is undisputed that Florida substantive law governs the issues raised in Travelers' Motion. *See* [Doc. 12].

[3] The Court was unable to locate any authority directly on point, and the parties agree that no court has decided this question.

7

>    insurer[;] [or]
>    . . .
>    (b) By the commission of any of the following acts by the insurer:
>       1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;
>       2. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made; or
>       3. Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy.

Fla. Stat. § 624.155(1).

After identifying actionable conduct, subsection (3) imposes a procedural condition precedent, commonly referred to as the "Civil Remedy Notice," by requiring a claimant to provide the Florida Department of Financial Services and the insurer with advance notice of the alleged violation:

>    (3)
>       (a) As a condition precedent to bringing an action under this section, the [Florida Department of Financial Services] and the authorized insurer must have been given 60 days' written notice of the violation. . . .
>       (b) The notice shall be on a form provided by the [Florida Department of Financial Services] and shall state with specificity the following information, and such other information as the department may require:
>          1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
>          2. The facts and circumstances giving rise to the violation.
>          3. The name of any individual involved in the violation.
>          4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of

> the policy to the third party claimant pursuant to written request.
> 5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.
>
> (c) No action shall lie if, within 60 days after the insurer receives notice from the department in accordance with this subsection, the damages are paid or the circumstances giving rise to the violation are corrected.

*Id.* § 624.155(3). The sixty-day window provided for in subsection (3)(c) "provides insurers with a final opportunity 'to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed.'" *Fridman v. Safeco Ins. Co. of Ill.*, 185 So.3d 1214, 1220 (Fla. 2016) (citation omitted).

Section 627.727 defines the specific damages recoverable from a UM insurer in a bad-faith action:

> (9) The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor.

*Id.* § 627.727(9).

Giving this statutory language a "fair reading," and assigning its words their ordinary meaning, the Court finds the statute unambiguous. *Est. of Keeter v. Comm'r of Internal Revenue*, 75 F.4th 1286, 1279 (11th Cir. 2023). Sections 624.155 and 627.727(9) work together to establish both the right to sue a UM insurer for bad faith and the full scope of damages recoverable in such an action. Section 624.155 creates the cause of action, allowing an insured to state a claim by alleging that: **(1)** he was "damaged"; **(2)**

9

the damage was caused by his insurer's misconduct—either a violation of one of the statutes listed in subsection (1)(a) or a bad faith act under subsection (1)(b); **(3)** he filed a Civil Remedy Notice in accordance with subsection (3); and **(4)** the insurer failed to cure the violation within 60 days. *Id.* § 624.155.

Section 627.727(9) then expands the remedies available in UM bad-faith cases, authorizing recovery of the total amount of the claimant's damages—including amounts exceeding policy limits, interest on unpaid benefits, attorney's fees, and any other damages caused by the insurer's misconduct—regardless of whether those damages were caused by the insurer or the original tortfeasor. Together, these provisions ensure that UM insurers are held fully accountable for handling claims in bad faith.

The Court finds that the allegations in Plaintiff's Amended Complaint "plausibly give rise to an entitlement to relief" under § 624.155's "clear and unambiguous" text. Fla. Stat. § 624.155; *McCullough*, 907 F.3d at 1333 (citation omitted); *Palm Beach Cnty.*, 53 F.4th at 1333 (citation omitted); *see* [Doc. 10, ¶¶ 35–40]. The Amended Complaint alleges (1) that Plaintiff was damaged, [*id.* at ¶39]; (2) by Travelers' alleged misconduct, [*id.* at ¶ 38]; (3) that Plaintiff filed a Civil Remedy Notice, [*id.* at ¶ 18, pp. 15–18]; and (4) that Travelers did not remedy the alleged violations, [*id.* at ¶ 18].

Travelers urges the Court to impose an excess-judgment requirement by analogy to third-party bad-faith claims and legislative history. *See* [Doc. 12-1, Section B]; Fla.

Stat. § 624.155. The Court easily agrees that a claimant must allege an excess judgment or "functional equivalent" to state a third-party bad-faith claim under current Florida precedent. *See, e.g., Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1344 (11th Cir. 2023) (citation omitted); *Perera*, 35 So.3d at 899. There's also no doubt that courts apply the same analysis to first- and third-party claims under Florida's bad-faith statute in most contexts.[4]

However, neither the Court nor the Parties located any authority holding that the excess-judgment requirement imposed by Florida courts for third-party bad-faith claims, *see Perera*, 35 So.3d at 899, applies equally to first-party claims. The Florida legislature expressed its intent clearly through this statute, nothing in the text requires an excess judgment to state a first-party bad-faith claim, and the Court simply isn't permitted to rewrite the law under the guise of interpreting it—especially where no

---

[4] *See, e.g., Dunn v. Natl. Sec. Fire and Cas. Co.*, 631 So.2d 1103, 1106–07 (Fla. Dist. Ct. App. 1993), *receded from on other grounds by Boozer v. Stalley*, 146 So.3d 139, 140 (Fla. Ct. App. 2014) (explaining that because § 625.155 created first-party bad-faith claims without expanding recovery for mental pain and suffering, the *Butchikas* limitation on such damages in common-law third-party bad-faith claims applies equally to statutory first-party claims); *Boozer*, 146 So.3d at 143 (holding that the same rules govern discovery in first- and third-party bad-faith cases); *Fridman*, 185 So.3d at 1221 (citation omitted) (noting that in both first- and third-party bad-faith actions, one element of damages includes any amount in access of the policy limits); *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1058–63 (11th Cir. 2022) (holding that a final judgment exceeding all available insurance coverage "can satisfy the causation element" of a first-party bad-faith claim, whether it results from a consent judgment or jury verdict).

binding Florida or Eleventh Circuit precedent requiring it to do so.[5] *See Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009).[6]

Travelers also argues that Plaintiff's Civil Remedy Notice fails to identify a bad-faith act that caused damages and therefore fails to satisfy § 624.155(3), a condition precedent to his first-party bad-faith claim. *See* [Doc. 12-1, pp. 12–14]; *see* [Doc. 10, pp. 15–18]. However, the Court finds that the Notice clearly complies with each statutory requirement, and that it reflects a good-faith effort to give Travelers a "final opportunity 'to comply with their claim-handling obligation when a good-faith decision by the insurer would indicate the contractual benefits are owed.'" Fla. Stat. § 624.155(3); *Fridman*, 185 So.3d at 1220; [Doc. 6-2].

---

[5] The Court acknowledges that Florida courts have interpreted this statute to require an excess judgment—or a "functional equivalent"—to establish causation in third-party bad-faith claims, despite the absence of such a requirement in the statute's plain text. *See, e.g.*, *Perera v. U.S. Fidelity & Guar. Co.*, 35 So.3d 893, 899–900 (Fla. 2010). The Court has reviewed those cases and is familiar with their reasoning. In essence, when a third party alleges that an insurer's bad faith caused their damages, they cannot demonstrate causation without evidence that an excess judgment either exposed them to liability beyond the available policy limits (in the case of a third-party tortfeasor) or forced an excess insurer to pay more than it would have if the primary insurer had acted in good faith. *Id.* at 901–02.

That reasoning, however, does not translate to first-party bad-faith claims, where the insured is also the injured party, and thus is neither exposed to the excess judgment nor responsible for any increased payment obligation. Without binding precedent requiring this Court to apply the excess-judgment rule to first-party claims, the Court finds that the better route is to simply interpret the statute as written.

[6] Travelers also argues that, in-the-alternative, the Court should strike Plaintiff's request for emotional distress damages because they are unavailable in first-party bad-faith actions. [Doc. 12-1, p. 15]. Under Florida law, "damages for mental pain and suffering" are available in first-party bad-faith claims "where the insurer's conduct is so gross and extreme as to amount to an independent tort, and to merit the award of punitive damages." *Dunn*, 631 So.2d at 1107. Plaintiff seeks punitive damages under Fla. Stat. § 624.155(8) and pleaded factual allegations supporting them, so the Court **DENIES** Travelers' motion to dismiss on those grounds as well. *See* [Doc. 10]; *Scheuer*, 416 U.S. at 236.

Thus, the Court finds that Plaintiff "is entitled to offer evidence to support" his claim, *Scheuer*, 416 U.S. at 236, and dismissal is improper.

B. <u>**Cross-Motions for Partial Summary Judgment (Setoff Issue)**</u>

Second, the parties move for cross summary judgment on the issue of whether (really, to what extent) Plaintiff's $600,000 jury verdict should be reduced—or "set off"—by amounts he previously received through the at-fault driver's liability insurance and workers' compensation. *See* [Doc. 21]; [Doc. 26].

Again, Florida law governs the Court's interpretation of the Policy. *Supra* note 2. "Under Florida law, the interpretation of an insurance contract is a matter of law to be decided by the [C]ourt." *AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F.Supp.3d 1334, 1337 (M.D. Fla. 2019). "Florida courts have said again and again that 'insurance contracts must be construed in accordance with the plain language of the policy.'" *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir. 2005) (citation omitted).

The Policy contains a Florida UM endorsement,[7] which limits the Policy's coverage by allowing Travelers to deduct any amounts awarded by a jury:

**FLORIDA UNINSURED MOTORISTS COVERAGE--NONSTACKED**
. . .

---

[7] The Policy contains similar UM Coverage endorsements for several states. *See* [Doc. 26-3, pp. 76–99]. Each contains the same nonduplication provision. *See* [Doc. 26-3, pp. 77, 82, 86, 98]. In its briefs, Travelers repeatedly references the North Carolina endorsement rather than the Florida endorsement. *See* [Doc. 25, p. 3 (citing [Doc. 26-3, p. 77])]; [Doc. 26-1, p. 4]; [Doc. 26-2, ¶ 2]. The Court takes this to be a scrivener's error and looks to the Florida endorsement instead.

**D. Limit of Insurance**

. . .

3. We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.
4. We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

[Doc. 26-3, p. 86]. Florida law specifically provides that UM coverage should not duplicate other recoveries, such as from the tortfeasor's liability insurer. Fla. Stat. § 627.727(1).

Travelers contends that it is entitled to a total setoff of $306,970.14: which includes (1) the $100,000 Plaintiff received from the at-fault driver's liability carrier; (2) the $96,065.31 paid by Travelers under the workers' compensation policy for past medical bills; and (3) $110,904.83 of the workers' compensation settlement, which was paid to Plaintiff and to the Division of Child Support Services on Plaintiff's behalf. Plaintiff, on the other hand, (1) does not dispute that Travelers is entitled to setoff the $100,000 he received from the at-fault driver's liability insurer; but he argues that (2) Travelers is not entitled to any setoff based on past medical expenses because it made no effort to prove that whatever amounts it paid were actually duplicative of medical expenses awarded by the jury; and (3) Travelers is not entitled to any setoff based on the workers' compensation settlement because that settlement did not include any amount designated for future medical expenses. *See* [Doc. 31, pp. 8–9]. Plaintiff also argues that Travelers fails to account for post-judgment interest under O.C.G.A. § 7-4-

12(a). [Doc. 31, pp. 8–9].

### 1. Liability Insurer Settlement ($100,000)

It is undisputed at this point that Travelers may deduct the $100,000 settlement from the at-fault driver's insurer from the $600,000 jury verdict. [*Id.* at ¶ 12]. The Court finds that to be the case and quickly moves on to determine what portion of Plaintiff's workers' compensation settlement, if any, Travelers is entitled to set off from the remaining $500,000.

### 2. Workers' Compensation Past Medical Benefits ($96,065.31)

While Travelers will ultimately be entitled to a setoff for any past medical benefits paid under Plaintiff's workers' compensation policy, it has not met its burden of showing that there is no dispute over the precise amount paid. *See* Fed. R. Civ. P. 56. The jury awarded Plaintiff $273,739.24 for past medical expenses. [Doc. 26-5, p. 2]. According to Travelers, "Travelers Indemnity Company of America[] paid a total of $96,065.31 for medical expenses associated with the subject accident under" Plaintiff's workers' compensation policy. [Doc. 26-2, ¶ 7].

Plaintiff, however, states that he is "unable to admit or deny" that fact because he "has been unable to review Travelers' internal documents to determine what amounts it actually paid." [Doc. 31-1, ¶ 7]. Under Local Rule 56, "[t]he respondent to a motion for summary judgment may [] assert insufficient knowledge to admit or deny a material fact asserted by the movant [if he] has complied with the provisions of Rule 56(d) of the

Federal Rules of Civil Procedure." LR 56, MDGa. Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Here, Plaintiff's counsel, Mr. Walker, submitted a declaration explaining that he cannot admit or deny certain facts material to Travelers' Motion because Travelers has refused to produce documents or provide a deposition date for its declarant—despite several requests and extensions to do so. *See* [Doc. 31-4, Walker Decl.]. Because Plaintiff complied with Rule 56(d), he is entitled to an opportunity to develop facts that could test Travelers' assertions as to the amount of medical benefits it has paid and to require Travelers to prove that the jury's award duplicated medical expenses it paid through Plaintiff's workers' compensation policy. Travelers has not yet met its burden of showing that its claimed amount is undisputed or even accurate. Accordingly, summary judgment on this point is improper at this time.

### 3. Workers' Compensation Settlement ($110,904.83)

Finally, Travelers seeks to offset $110,904.83 of the workers' compensation settlement, arguing that it was an "undifferentiated" lump sum and must be fully offset under Florida law. [Doc. 26-1, p. 15]; *see* [Doc. 26-7]. The Court disagrees.

Florida law prohibits insurers from offsetting UM payments unless the jury's

16

verdict actually duplicates prior compensation received by the claimant, and it places the burden on the insurer to prove duplication. *See Centennial Ins. Co. v. Fulton*, 532 So.2d 1329, 1332 (Fla. Dist. Ct. App. 1988); *State Farm Mut. Auto. Ins. Co. v. Vecchio*, 744 So.2d 570, 571 (Fla. 4th DCA 1999).

The workers' compensation settlement allocated $109,904.83 to be paid directly to Plaintiff, calculated on the basis of Plaintiff's life expectancy. [Doc. 26-7, ¶ 12]. It further states that Plaintiff remains responsible for future medical expenses and could pursue such damages in the parallel personal injury action, [*id.* at ¶ 10], and that is precisely what he did.

The jury in the underlying action awarded damages for future medical expenses, past medical expenses, and general damages, but did not award any damages for future lost wages. [Doc. 26-5]. Therefore, Travelers has not demonstrated that any portion of the jury's award duplicated the benefits Plaintiff received in the workers' compensation settlement.

Travelers argues that the full amount, minus attorney's fees, constituted an "undifferentiated" lump-sum settlement that specifically contemplated medical benefits. [Doc. 26-1, Section D]. However, the workers' compensation settlement was entered into in accordance with Georgia's workers' compensation laws and board rules. [Doc. 26-7, ¶ 5]; *see* Ga. State Bd. of Workers' Comp. R. 15(e) (effective November 1, 2019), https://sbwc.georgia.gov/statutes-and-rules/rules. Those rules do not allow

17

undifferentiated settlements: "[n]o portion of any settlement payment shall be designated as medical except the amount specified in the approved stipulation." Ga. State Bd. of Workers' Comp. R. 15(e), https://sbwc.georgia.gov/statutes-and-rules/rules. And an attorney may not receive a "fee as a portion or percentage of any medical treatment or expenses, or any money designated for medical treatment or expenses." *Id.*

Here, the settlement does not designate any amount for medical payments, and Plaintiff paid his attorney at 25% contingency fee on the entire amount. *See* [Doc. 26-7]. Thus, no portion of it could lawfully be meant to compensate Plaintiff for medical expenses, past or future, so it clearly compensated Plaintiff for future lost wages. Travelers' interpretation would render the settlement unlawful, and it is axiomatic that "an interpretation that makes a contract lawful is preferred to one that renders it unlawful." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1486 (D.C. Cir. 1997); *see Walsh v. Schlecht*, 428 U.S. 401, 408 (1997).

To summarize, Travelers is entitled to a $100,000 setoff based on Plaintiff's settlement with the at-fault driver's insurer. However, because Plaintiff was prevented from presenting "facts essential to justify its opposition" to Travelers' requested setoff based on past medical payments, and because Travelers cannot show that the jury verdict duplicated any portion of Plaintiff's workers' compensation settlement, it has not met its burden of showing that it is entitled to additional deductions.

## CONCLUSION

Accordingly, because the Court finds that the plain text of Florida's bad-faith statute, Fla. Stat. § 624.155, does not require an excess judgment to state a first-party claim, the Court **DENIES** Travelers' Partial Motion to Dismiss [Doc. 12]. Next, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment [Doc. 21], and **GRANTS in part** and **DENIES in part** Travelers' Motion for Partial Summary Judgment [Doc. 26]. Travelers has met its burden of demonstrating that it is entitled to a $100,000 setoff for the settlement Plaintiff received from the at-fault driver's liability insurer. After proper discovery, should Travelers be able to show that the jury's award duplicated medical bills paid through Plaintiff's workers' compensation policy, it will be entitled to set off those amounts.[8]

**SO ORDERED**, this 22nd day of May, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[8] Although the Court cannot yet determine the precise amount Travelers must pay, Travelers doesn't dispute that Plaintiff is also entitled to post-judgment interest under O.C.G.A. § 7-4-12(a). *See* [Doc. 31, p. 17].